BOB ZIMMERMAN FORD,
INC., Appellant,

v.

MIDWEST AUTOMOTIVE
I, L.L.C., Appellee,

BMW North America, Inc.,
Intervenor–Appellee.

No. 02–1708.

Supreme Court of Iowa.

May 12, 2004.

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

John F. Lorentzen of Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee Midwest Automotive I, L.L.C.

Stephen M. Bledsoe and Lawrence M. Berkowitz of Berkowitz Stanton Brandt Williams & Shaw L.L.P., Kansas City, Missouri, and Scott McLeod of Lynch Dallas, P.C., Cedar Rapids, for intervenor-appellee BMW North America, Inc.

Martha Martell, West Des Moines, for amicus curiae Iowa Automobile Dealers Association.

CARTER, Justice.

Bob Zimmerman Ford, Inc. (Zimmerman), operator of a BMW franchise, appeals from an adverse summary judgment in its declaratory judgment action seeking to establish that the right of first refusal granted to the franchiser, BMW North America, Inc. (BMW), in case of a franchise transfer, is invalid by reason of the provisions of Iowa Code section 322A.12 (1997). The action was brought against Midwest Automotive I, L.L.C. (Midwest), an assignee of BMW's first-refusal rights. BMW later intervened in the action.

The district court concluded that the version of section 322A.12 in effect at the time of a proposed sale of Zimmerman's franchise to John Chezik did not preclude BMW from exercising the right of first refusal granted to it under the franchise agreement. After reviewing the record and considering the arguments presented, we are convinced that the statute, as it existed at the time of the transaction, did serve to invalidate the right of first refusal contained in the franchise agreement. Consequently, we reverse the judgment of the district court and remand the matter to that court for further proceedings consistent with this opinion.

Zimmerman has operated a BMW franchise in Cedar Rapids since 1977 under a series of dealer agreements with BMW. BMW is the North American distribution arm of a German corporation. Its responsibilities include maintaining BMW dealerships in North America. Midwest is a Des Moines auto dealership.

In November 1993 BMW and Zimmerman entered into the dealer agreement at issue here. Article I of the dealer agreement grants BMW a right of first refusal in the event Zimmerman would sell the franchise. It provides:

> [W]henever Dealer intends to dispose of Dealer's BMW assets or to change majority ownership ..., BMW NA shall have the first right to purchase Dealer's BMW assets or ownership interests pursuant to this Article. Dealer agrees to disclose to the prospective buyer that any sale or disposition shall be subject to the terms of this Dealer Agreement. BMW NA will advise Dealer if it will exercise the right of first refusal within forty-five (45) days after Dealer has furnished all applications and information.... If BMW NA exercises the right, BMW NA will assume the proposed buyer's rights and obligations under the written agreement the proposed buyer negotiated with Dealer (the "Buy/Sell Agreement"). The purchase price shall be that set forth in the Buy/Sell Agreement.
>
> In the event BMW NA exercises its right of first refusal, BMW NA may assign the Buy/Sell Agreement to any party. BMW NA shall remain responsible to guarantee the purchase price to be paid by the assignee.

Zimmerman does not dispute the meaning of this clause, only its legal validity.

In the fall of 1999, Zimmerman explored the possibility of selling its BMW franchise. Mark Zimmerman, president and principal owner of Zimmerman, contacted BMW, but BMW expressed no interest at Zimmerman's offered price of $850,000. Zimmerman then began negotiations with John Chezik. Chezik is an auto dealer in Kansas City who operated a Honda dealership in Iowa City and a Suzuki dealership in Cedar Rapids.[1]

In October 1999 Zimmerman orally agreed to sell its BMW assets to Chezik for $650,000. John Bell, manager of Chezik's operations in Cedar Rapids and Iowa City, prepared a one-page purchase agreement. On December 3, 1999, Zimmerman prepared a more formal written agreement involving the sale of the franchise to Chezik for $650,000. This agreement provided for a closing date of December 31, 1999. Chezik delayed the execution of this agreement because he wanted to give BMW time to review the proposed transaction. He eventually did sign the agreement on December 23, 1999, after the closing date had been extended to March 15, 2000. The contract did not condition the sale on BMW's approval of Chezik.

On March 13, 2000, Zimmerman and Chezik agreed to extend the March 15 closing date to April 6, 2000. Zimmerman's attorney prepared a document amending the agreement to reflect this change. Zimmerman understood this change occurred because Chezik needed more time to confer with BMW. The Zimmerman–Chezik sale did not close on April 6, 2000, or anytime thereafter.

On April 13, 2000, within forty-five days of BMW receiving all requested information from Zimmerman and Chezik, but after the April 6 closing date on the transfer

agreement, BMW assigned its first-refusal rights to Midwest. On the same day, BMW sent a letter to Zimmerman notifying it of the assignment and that Midwest wished to exercise its right of first refusal by accepting the terms of the December 23, 1999, Zimmerman–Chezik agreement.

Zimmerman refused to honor the BMW Midwest right of first refusal. On May 5, 2000, it initiated this declaratory-judgment action asking the court to declare that the right of first refusal contained in the franchise agreement is in violation of section 322A.12.

## I. *Scope of Review.*

■ We review a summary-judgment ruling for correction of errors at law. Iowa R.App. P. 6.4; *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 731 (Iowa 2002). When the only controversy concerns the legal consequences flowing from undisputed facts, summary judgment is the proper remedy. *Am. Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998). The district court decision in the present case was based on the application of a statute to the undisputed facts and consequently presents an issue that is purely one of statutory interpretation. *See Burton v. Univ. of Iowa Hosps. & Clinics*, 566 N.W.2d 182, 185 (Iowa 1997) (summary judgment often the appropriate remedy when questions of statutory interpretation are controlling).

## II. *The District Court's Decision.*

The district court advanced three reasons in support of its ruling. The first was its conclusion that first-refusal rights are

---

1. The formal agreement originally named "A & L Holding Company" as the buyer and later designated "Auto Banc" as the buyer.

Both of these corporations are controlled by John Chezik, and Chezik will be referred to as the party in interest throughout this opinion.

well established in commercial transactions. Second, the court believed that a franchisee could adequately protect itself from any adverse consequences of the franchiser's exercise of a right of first refusal by including any necessary protections as conditions in the transfer documents that the franchiser would have to match. Finally, the district court supported its decision in part by interpreting the language "the franchiser shall give effect to such a change" as requiring approval of a franchise transfer by an existing franchisee on the same terms and conditions that have been negotiated. The court concluded that the statute did not require the acceptance of a new franchisee designated by the existing franchisee.

### III. *The Franchisee's Statutory Protections.*

■ Among the statutory protections afforded a franchisee in Zimmerman's position at the time of the challenged transaction was the following:

> Notwithstanding the terms, provisions or conditions of any agreement or franchise, subject to the provisions of subsection 2 of section 322A.11, in the event of the sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business or by stock transfer or in the event of change in the executive management of the franchisee's dealership the franchiser shall give effect to such a change in the franchise unless the transfer of the franchisee's license under chapter 322 is denied or the new owner is unable to obtain a license under that chapter, as the case may be.

Iowa Code § 322A.12. Also deemed important by the parties in the present action are the consequences of a 2002 amendment to the foregoing statute, which changed the words "shall give effect to such a change in the franchise" to "shall give effect to the change in the franchise," and added the following additional paragraph:

> Notwithstanding the terms, provisions, or conditions of an agreement or franchise, the sale or transfer, or the proposed sale or transfer, of a franchisee's dealership, or the change or proposed change in the executive management of a franchisee's dealership *shall not make applicable any right of first refusal of the franchiser.*

2002 Iowa Acts ch. 1063, § 39 (emphasis added).

■ We approach issues of statutory interpretation with the avowed purpose of determining the true intention of the legislature. *Gardin v. Long Beach Mortgage Co.,* 661 N.W.2d 193, 197 (Iowa 2003); *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998). Our first step in ascertaining that intention is to closely examine the statute's language. *Bernau,* 580 N.W.2d at 761. When the legislature has not defined the words of a statute, we look to prior decisions of this court, similar statutes, dictionary definitions, and common usage. *Id.*

We have recognized that section 322A.12 is intended to override any contrary provisions contained in a franchise agreement. *Craig Foster Ford, Inc. v. Iowa Dep't of Transp.,* 562 N.W.2d 618, 622 (Iowa 1997). Proceeding from that premise, we are convinced that a literal interpretation of section 322A.12, as it existed at the time of the challenged transaction, is entirely inconsistent with a recognition of a right of first refusal in the franchiser. In considering the district court's reasoning, we are not persuaded that the identity of the new franchisee is not a significant element of the transaction from the perspective of the selling franchisee. The very existence of a right of first refusal could make a prospective buyer feel uncomfortable. Second, al-

though certain matters important to the transferring franchisee might be included in the agreement of sale that the franchiser would be forced to match, this too might dissuade a prospective buyer from purchasing the franchise. Finally, and perhaps most important, the identity of the new franchisee may be of extreme importance to the existing franchisee in the case of a desire to sell to family members or close friends.

The statutory language provides "the franchiser shall give effect to such a change in the franchise." In this context, "such" indicates "of the character, quality, or extent previously indicated or implied." Merriam–Webster's Collegiate Dictionary 1172 (10th ed.2002). "Change" is a word meaning "transformation." *Id.* at 191. In the context of this statute, the words "such a change" manifestly refer to the specific franchise transfer that the parties have negotiated.

■ Given the language used in the agreement, the crucial question becomes whether a franchiser's exercise of a right of first refusal constitutes a refusal to give effect to the sale or transfer of ownership. We are convinced that it does. It seems clear the right conferred by this statute was intended to be unfettered except as it has been limited by the statute. The only exceptions that the legislature has provided to the franchiser's obligation to "give effect" to the change are the inability of the new franchisee to obtain a license or a successful challenge to the franchise under section 322A.11. Neither of those circumstances exist in the present case. We have recognized that the legislature may regulate by omission as well as by inclusion. *Barnes v. Iowa Dep't of Transp.,* 385 N.W.2d 260, 263 (Iowa 1986). This is particularly true when certain conditions of entitlement are listed and others are not. *Id.; In re Estate of Wilson,* 202 N.W.2d 41, 44 (Iowa 1972); *N. Iowa Steel Co. v.*

*Staley,* 253 Iowa 355, 357, 112 N.W.2d 364, 365 (1961).

■ The appellees seek to confirm the validity of the district court's interpretation of section 322A.12 by invoking the presumption that any material change in the language of a statute is presumed to alter the law. *See State v. Ahitow,* 544 N.W.2d 270, 273 (Iowa 1996). Based on this premise, they urge that the enactment of an express prohibition of rights of first refusal in the 2002 amendment to section 322A.12 indicates that such a right was not denied a franchiser by the statute prior to its amendment. This argument would be significant only if our attempt to determine the meaning of the act prior to the amendment left us with some doubt. For the reasons we have stated, it does not. In *State v. Guzman–Juarez,* 591 N.W.2d 1 (Iowa 1999), we expressed approval of the following principles in evaluating the effect of time and circumstances on the interpretation of a statutory amendment.

If [the amendment] follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute.

*Guzman–Juarez,* 591 N.W.2d at 3 (quoting *People ex rel. Westchester Fire Ins. Co. v. Davenport,* 91 N.Y. 574, 591–92 (1883)). There is reason to suspect that the 2002 amendment to section 322A.12 was in direct response to the trial court's decision in the present case. As such, we are convinced that it represents an attempt to clarify the meaning of the statute as it existed prior to the amendment.

*Crivelli v. General Motors Corp.,* 215 F.3d 386 (3d Cir.2000), on which the appel-

lees rely, is unpersuasive. Although that case upheld a franchiser's right of first refusal with regard to a transfer of the franchise, the statutory protection afforded the franchisee merely provided that the franchiser shall "not unreasonably withhold consent" to a transfer of a franchise. As previously noted, section 322A.12 provides with regard to a franchise change that the franchiser shall give effect to such a change unless certain enumerated conditions exist. Those conditions have not been shown to exist in the present case.

Finally, we reject the appellees' contention that our decision in *Midwest Automotive III, L.L.C. v. Iowa Department of Transportation*, 646 N.W.2d 417 (Iowa 2002), recognized a change in existing law. Significantly, the change recognized in that case involved a 2001 amendment to Iowa Code section 322A.11. We are dealing with a 2002 amendment to section 322A.12. In speaking generally of the situation involved in the present case, we stated in *Midwest Automotive III* that, short of termination or the absence of a license, the statute "requires a franchiser faced with the sale of a dealership to recognize the transfer." 646 N.W.2d at 423.

We have considered all issues presented and conclude that the trial court erred in its interpretation of section 322A.12 as it existed at the time of the challenged transaction. The provisions of the statute at that time rendered invalid the franchiser's right of first refusal as contained in the franchise agreement. The judgment of the district court is reversed, and the case is remanded to that court for entry of a declaratory judgment consistent with this opinion.

**REVERSED AND REMANDED.**