Maxine Gail VEATCH and Chris Price, Plaintiffs–Appellants,

v.

BARTELS LUTHERAN HOME, a/k/a Bartels Lutheran Retirement Community, Debra K. Schroeder and Brianna Brunner, Defendants–Appellees.

No. 10–1371.

Court of Appeals of Iowa.

May 11, 2011.

Laura L. Folkerts and John J. Hines of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellants.

Edward M. Blando, Christopher L. Bruns and Robert M. Hogg of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellees.

Heard by EISENHAUER, P.J., and POTTERFIELD and TABOR, JJ.

TABOR, J.

This appeal raises the question whether our savings statute, Iowa Code section 614.10 (2009), allows plaintiffs to refile multiple lawsuits during the six-month period provided in the statute. Plaintiffs Maxine Veatch and Chris Price challenge the district court's grant of summary judgment in favor of Bartels Lutheran Home. The district court concluded section 614.10 sanctioned only one refiling within six months, barring the plaintiffs' second refiling as untimely. After examining the words used by the legislature, we agree that the savings clause allows a single refiling and affirm the district court's grant of summary judgment.

## I. Background Facts and Proceedings

On September 27, 2006, plaintiffs Veatch and Price visited their mother, Agnes Bell, at her skilled-care residential unit at Bartels Lutheran Home (Bartels).[1] On that day, Bartels employee Jan Whiteside reported to her supervisor, Jennifer Kane, that she witnessed Veatch "shove" Bell into her wheelchair and that Price, immediately thereafter, returned Bell to her room. Veatch and Price dispute that account and maintain that Veatch caught her mother, preventing her from falling to the ground when she suddenly collapsed, and guided Bell into her wheelchair.

Upon hearing Whiteside's report, Kane instructed Whiteside to call the Iowa Department of Inspections and Appeals (DIA) to report the incident as a potential case of dependant adult abuse. Whiteside reported the incident to DIA and Bartels staff reported the incident to the State Ombudsman's Department of Elder Affairs, the Iowa Department of Human Services (DHS), and the Waverly Police Department. On September 29, 2006, Waverly Police Officer Jason Leonard arrested Veatch for simple misdemeanor assault. Veatch remained in jail overnight and was released the following day, subject to an order that she have no contact

---

1. Bartels Lutheran Home is also known as Bartels Lutheran Retirement Community.

with her mother. Veatch faced a jury trial on the assault charge commencing on August 2, 2007. On August 3, 2007, the jury returned a verdict finding her not guilty.

The DHS also opened an investigation and on January 18, 2007, issued a report indicating the allegation of dependant adult abuse against Veatch was founded. But on October 16, 2007, an administrative law judge reversed the DHS determination, holding the allegations of dependent adult abuse were unfounded.

On June 9, 2008, Veatch and Price timely filed their initial lawsuit in federal court to recover damages for the above occurrences. They alleged state-tort claims against Bartels Lutheran Home; Bartels' president and chief executive officer, Debra K. Schroeder; and Bartels' then-director of nursing, Brianna Brunner (collectively, the Bartels defendants);[2] as well as federal and state claims against the City of Waverly; and Sergeant Jason Leonard, the arresting officer for the Waverly Police Department (collectively, the Waverly defendants).[3] Both the Bartels defendants and the Waverly defendants moved for summary judgment. On October 9, 2009, the court granted the Waverly defendants' motion for summary judgment, declined to exercise jurisdiction over the remaining state-law claims relevant to this appeal, and dismissed those claims without preju-

dice in its judgment entered October 15, 2009.

On November 13, 2009, Veatch and Price filed another lawsuit against the Bartels defendants and the Waverly defendants in Iowa district court asserting their state-tort claims. That lawsuit was filed outside of the statute of limitations but within the six-month period provided in section 614.10; it was the plaintiffs' first refiling under section 614.10 after their initial lawsuit failed. The Waverly defendants again moved for summary judgment. On April 9, 2010, Veatch and Price voluntarily dismissed their tort claims against the Bartels defendants pursuant to Iowa Rule of Civil Procedure 1.943, but maintained their action against the Waverly defendants.

Also on April 9, 2010, Veatch and Price filed a lawsuit against only the Bartels defendants, again in state court, and again within the six-month period provided by section 614.10.[4] This was their second refiling under section 614.10. The Bartels defendants moved for summary judgment on three grounds: (1) the statute of limitations barred this third action; (2) immunity shielded the Bartels defendants from liability; and (3) an inability on the part of Veatch and Price to prove the elements of their claims.

On July 22, 2010, the court granted the Bartels defendants summary judgment,

---

**2.** Veatch and Price alleged the Bartels defendants should be liable for: (1) Abuse of Process—Criminal Assault; (2) Abuse of Process—Dependant Adult Abuse Allegation; (3) Malicious Prosecution—Criminal Assault; (4) Malicious Prosecution—Dependant Adult Abuse; (5) Defamation; (6) Conspiracy; (7) Intentional Infliction of Emotional Distress; (8) Breach of Contract; and (9) Invasion of Privacy.

**3.** Veatch and Price made the following allegations against the City and Leonard: (1) a claim under 42 U.S.C. § 1983 for a violation

of their rights under the United States Constitution and the Iowa Constitution; (2) False Imprisonment; (3) Negligence; and (4) Malicious Prosecution—Criminal Assault.

**4.** Their petition included the following claims: (1) Abuse of Process—Criminal Assault; (2) Abuse of Process—Dependant Adult Abuse Allegation; (3) Malicious Prosecution—Criminal Assault; (4) Malicious Prosecution—Dependant Adult Abuse; (5) Defamation; (6) Conspiracy; (7) Intentional Infliction of Emotional Distress.

concluding the action was untimely. In reaching its decision, the court applied canons of statutory construction and surveyed other jurisdictions' interpretations of their savings statutes. The court determined Iowa's savings statute allowed a party only one filing within the six-month period provided for in that statute. The court also concluded that "the balance of the remaining issues, if addressed individually, would have created a genuine issue of material fact, and the Court would not have granted Defendants' Motion for Summary Judgment" on those claims.

Veatch and Price appeal, contending the savings statute allows multiple refilings and that their lawsuit is, therefore, timely. The Bartels defendants assert that the district court incorrectly concluded genuine issues of material fact exist on each of the claims raised by the plaintiffs.

## II. Scope and Standard of Review

We review the grant of summary judgment for the correction of errors at law. *Sautter v. Interstate Power Co.,* 563 N.W.2d 609, 611 (Iowa 1997). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Gardin v. Long Beach Mortg. Co.,* 661 N.W.2d 193, 196 (Iowa 2003). We review the record in the light most favorable to the non-moving party. *Sautter,* 563 N.W.2d at 611.

Likewise, we review questions of statutory interpretation for the correction of legal error. *In re A.H.B., M.L.B., J.J.B.,* 791 N.W.2d 687, 689 (Iowa 2010); *State v. Wiederien,* 709 N.W.2d 538, 540 (Iowa 2006). And, "[s]ummary judgment is the appropriate remedy where questions of statutory interpretation are involved." *Gardin,* 661 N.W.2d at 197.

## III. Analysis

### A. Preservation

■ The Bartels defendants raise a threshold issue of preservation. They assert that Veatch and Price failed to preserve error "because they did not cite any authorities to the district court and they did not move to amend or enlarge under Iowa R. Civ. P. 1.981(3) and 1.904(2)." As a result, they allege, Veatch and Price did not "raise their argument with sufficient specificity" and, therefore, "failed to preserve error." Veatch and Price counter that the issue of whether the action is time-barred was raised and decided by the district court. They submit that their "summary judgment brief included far more than a single sentence about whether the action was time-barred," and that "[i]ncluding at least one sentence in a summary judgment brief about the issue is enough to preserve error when the district court then considers the issue and discusses it in its summary judgment ruling."

■ Our error preservation rules exist to ensure that district courts have the opportunity to correct or avoid errors and to provide appellate courts with a record to review. *State v. Pickett,* 671 N.W.2d 866, 869 (Iowa 2003).

In this case, the defendants asserted in their motion for summary judgment that the present action was untimely and that section 614.10 did not apply. Veatch and Price responded in their memorandum of authorities in support of their resistance to the summary judgment motion, arguing their action was timely under section 614.10. In its ruling, the district court thoroughly analyzed the timeliness argument and granted summary judgment on the issue of section 614.10's applicability. Because the argument was raised and the district court ruled upon it, we find the issue was preserved for our review. *See*

*Tetzlaff v. Camp*, 715 N.W.2d 256, 258–59 (Iowa 2006).

 Further, because the district court ruled on the issue, Veatch and Price were not required to file a rule 1.904 motion to preserve the issue for appeal as the Bartels defendants assert. Such a motion is required "[w]hen a district court *does not rule* on an issue properly raised." *Id.* at 259. To the extent the defendants contend Iowa Rule of Civil Procedure Rule 1.981[5] required Veatch and Price to file a motion to amend or enlarge under Rule 1.904, we disagree for the reasons previously stated.

### B. Merits

 The present action is untimely unless permitted by Iowa's savings statute, which provides as follows:

> If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first.

Iowa Code § 614.10.

The parties dispute the correct interpretation of section 614.10. The fighting issue is one of first impression: whether section 614.10 saves multiple actions filed within the six-month period from being time-barred or whether it allows a single refiling.

Veatch and Price contend the language of section 614.10 allows parties to refile a lawsuit multiple times within the six-month period and that the district court erred in holding the statute limits parties to a single refiling. They assert that "use [of] the term 'second' does not mean that only . . .

one action may be filed under § 614.10." They further allege that allowing multiple refilings within the six-month period is "consistent with the liberal construction of savings statutes that is favored in other jurisdictions" and consistent with the aim of limitation periods to "prevent the trial of stale claims." They contend the defendants would not be prejudiced by allowing multiple refilings. Finally, they argue their interpretation would not permit plaintiffs to "abuse the statute with an 'unending string' of refilings" because under Iowa Rule of Civil Procedure 1.943, a second dismissal "operate[s] as an adjudication against that party on the merits."

The Bartels defendants counter that the saving statute's reference to the "second" filing in the six-month period limits the plaintiffs to only one refiling. They assert that the " 'second' lawsuit was the 'new one' filed by Veatch and Price on November 13, 2009," and the current lawsuit "is their third action."

Both sides find support for their respective positions in cases from other jurisdictions. The Bartels defendants cite to out-of-state decisions that limit plaintiffs to one refiling under their savings statutes. *See, e.g., Evans ex rel. Evans v. Lederle Labs.*, 167 F.3d 1106, 1110 (7th Cir.1999) (recognizing that "Illinois courts have consistently held that [the savings statute] permits no more than one refiling within that period"); *Flesner v. Youngs Dev. Co.*, 145 Ill.2d 252, 164 Ill.Dec. 157, 582 N.E.2d 720, 721–22 (1991) (holding Illinois savings statute "permits one, and only one, refiling"); *U.S. Fire Ins. Co. v. Swyden*, 175 Okla. 475, 53 P.2d 284, 285–88 (1935) (holding that phrase "commence a new action" authorized only one filing and reasoning

---

**5.** The defendants do not expound on their allegation with respect to Rule 1.981(3), saying only: "Veatch and Price did not preserve error because . . . they did not move to amend or enlarge under Iowa R. Civ. P. 1.981(3) and 1.903(2)." Rule 1.981(3) provides, in part: "If summary judgment is rendered on the entire case, rule 1.904(2) shall apply."

that if the legislature had intended to allow multiple refilings, "then such [savings] statutes would have been worded in the language of the ordinary statutes of limitation, with minor changes"). Veatch and Price point to decisions from two state courts allowing multiple refilings. *See Sharp Bros. Contracting Co. v. Westvaco Corp.*, 817 P.2d 547, 551 (Colo.App.1991) (noting that " 'a new action' does not mean one new action" under Colorado's savings statute); *Hebertson v. Bank One*, 995 P.2d 7, 11 (Utah Ct.App.1999) ("[I]f the Legislature meant to limit the savings statute to a single use per cause of action, it would have avoided general phraseology like 'within due time' and stated its intention clearly, a simple thing to do."). Recognizing the distinct language used in the various state savings statutes, we hesitate to place too much weight on the results reached by particular decisions in other jurisdictions. But in light of our independent statutory interpretation below, we find more persuasive those cases that limit parties to a single refiling.

When faced with dueling interpretations of a statute, our goal is to discover the legislature's "true intention." *Gardin*, 661 N.W.2d at 197. "Our first step in ascertaining the true intention of the legislature is to look to the statute's language" because the " 'words chosen by the legislature' " help reveal legislative intent. *Id.; see Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 309 (Iowa 2007) (citation omitted). "We do not search beyond the express terms of a statute when that statute is plain and its meaning is clear. Moreover, we must read a statute as a whole and give it 'its plain and obvious meaning, a sensible and logical construction.' " *Gardin*, 661 N.W.2d at 197 (citations omitted). When the legislature has left words in a statute undefined, we "look to prior decisions of this court, similar statutes, dictionary definitions, and com-

mon usage." *Bob Zimmerman Ford, Inc. v. Midwest Auto. I, L.L.C.*, 679 N.W.2d 606, 609 (Iowa 2004).

Because the savings statute does not define the terms—"second" or "new one"—we turn to prior decisions of our courts, dictionary definitions, and common usage to ascertain their meaning. *Id.* We begin by noting that our supreme court previously construed the phrase "new one" as used in section 614.10, and determined that it "relates to a second 'action' based upon the same cause as the original." *Murphy v. Bd. of Supervisors of Johnson Cnty.*, 205 Iowa 256, 259, 215 N.W. 744, 745 (1927) (emphasis added). Because our supreme court equated "new one" with the "second action" mentioned in the savings statute, we find that common definitions of the word "second," should apply to both phrases at issue.

When interpreting statutory language, our courts often consider dictionary definitions. *Miller v. Marshall Cnty.*, 641 N.W.2d 742, 748 (Iowa 2002). A common definition of the word "second" is "next to the first in place or time." *See Webster's New Collegiate Dictionary* 1035 (1981) (providing, as another definition, "one that is next after the first in rank, position, authority, or precedence"); *see also Webster's Third New Int'l Dictionary* 2050, 2474 (2002) (defining "second" as "being number two in a countable series," and further defining "two" as "being one more than one in number"). Black's Law Dictionary defines the term "second" as "denot[ing] either sequence in point of time or inferiority or postponement in respect to rank, lien, order, or privilege." *Black's Law Dictionary* 1351 (6th ed.1990). The term "action," in its "usual legal sense" means a lawsuit brought in a court." *Id.* at 28.

The common usage of the word "second" thus points to one particular, identifiable action—the one that immediately follows the first action. The word "second" is more definite and restrictive than terms like "subsequent" or "later," [6] which do not refer to, or single out, one particular action or event in a successive series. In choosing the term "second" rather than a less-specific term when identifying the action that will function as a "continuation of the first," the legislature signaled its intent. The statute restricts its application by providing, "the second shall . . . be held a continuation of the first." Thus, the statute only saves one refiling. Subsequent filings, beyond the first refiling—the one that immediately follows the initial, failed attempt—do not fall within the statute's protections. "If the legislature intended for ['second'] to have a broader meaning, it should have said so." *Gardin,* 661 N.W.2d at 199.

We find further support for our conclusion that the legislature intended to allow only one refiling in its choice of the article "a" in the phrase that creates the right to bring a new action after the first action fails. The operative phrase provides: "If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and *a new one* is brought within six months thereafter, the second shall . . . be held a continuation of the first." Iowa Code § 614.10 (emphasis added).

Our supreme court interpreted the word "a" and explained that "a" is "defined as an article which is 'used as a function word before most *singular* nouns other than proper and mass nouns when the individual in question is undetermined, unidentified, or unspecified.' " *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). In *State v.*

*Kidd,* our supreme court described the article "a" as a " 'function word before most singular nouns,' " and applied the same interpretation to the word "an," which it described as "a euphonic mutation of the article 'a.' " *Id.* It then concluded that "[b]ased on the ordinary meaning of the word 'an,' as ascertained from the dictionary, we think the [phrase 'an offensive weapon'] refers to possession of a single offensive weapon." *Id.* Likewise, here, the legislature's use of the article "a" before the phrase "new one" informs our understanding of that phrase. We conclude that the phrase "new one" that follows the article "a" operates as a singular noun. If the legislature had intended to allow multiple new actions, it could have chosen the term "any" (as it did earlier in the statute, "for any cause except negligence"). *See Fisher Controls Int'l, Inc. v. Marrone,* 524 N.W.2d 148, 149 (Iowa 1994) (holding phrase "any legal action" was broader than "an action"). Thus, the phrase "a new one" refers to a single refilling; and the statute, therefore, saves only one additional action.

We decline the invitation by Veatch and Price to expand the parameters of section 614.10 based on the "liberal construction" approach applied by other state courts to their savings statutes. Our supreme court has not liberally construed Iowa's savings statute. *See Boomhower v. Cerro Gordo County Bd. of Supervisors,* 173 N.W.2d 95, 98 (Iowa 1969) (Becker, J., dissenting) (bemoaning narrow construction given to savings statute). Moreover, we don't think liberal construction can overcome the intent to allow a single refiling signaled by the actual language employed by the legislative drafters.

6. For example, Webster's New Collegiate Dictionary defines "subsequent" as "following in time, order, or place." *Webster's New Collegiate Dictionary* 1152 (1981).

Furthermore, although the Bartels defendants acknowledged at oral argument that they could not show they were prejudiced by multiple refilings within the additional six months provided by the savings statute, we do not believe that prejudice is a consideration in this case. *See Gibbs v. Illinois Cent. Gulf R. Co.*, 420 N.W.2d 446, 449 (Iowa 1988) (noting general policy considerations behind statutes of limitations include assuring fairness to defendants and relieving courts of the burden of trying stale claims); *see also State Farm Fire & Cas. Co. v. Superior Ct.*, 210 Cal.App.3d 604, 258 Cal.Rptr. 413, 418 (1989) (holding no showing of prejudice is required to enforce statute of limitations). We are bound by the language of the savings statute, without regard to the absence (or existence) of prejudice.

Here, the first action was the one Veatch and Price timely filed in federal district court. Thus, the "second" action—the one "next to the first in ... time"—was the action filed in state court on November 13, 2009. That was the plaintiffs' first refiling under section 614.10 after their initial federal lawsuit failed. Although Veatch and Price filed that suit outside of the statute of limitations, assuming the necessary elements for application of Iowa Code section 614.10 were satisfied, that provision would "save" that lawsuit from the operation of the statute of limitations and preserve it for the court's consideration of the merits. Of note, Veatch and Price dismissed only the Bartels defendants from that suit; their action against the Waverly defendants remained intact after they dismissed the Bartels defendants.

The present case, against only the Bartels defendants, is the plaintiffs' second refiling under section 614.10. The language of section 614.10 does not save multiple or successive refilings—it saves only the first refiling. The suit is therefore untimely and barred by the statute of limitations. The district court, therefore, correctly granted the Bartels defendants' motion for summary judgment.

Because we conclude the plaintiffs' second refiling was not saved by section 614.10 and the district court correctly granted summary judgment on that ground, we do not review the remaining issues raised on appeal by Veatch and Price with respect to their substantive claims.

**AFFIRMED.**