Timothy L. GARDIN and Tammie S. Gardin, on behalf of themselves and all persons similarly situated, Appellants,

v.

LONG BEACH MORTGAGE COMPANY, Appellee.

No. 02–0109.

Supreme Court of Iowa.

May 7, 2003.

Mitchell Taylor of Cray, Goddard, Miller & Taylor, L.L.P., Burlington, Wood R. Foster, Jr. and Jordan M. Lewis of Siegel, Brill, Greupner, Duffy & Foster, P.A., Minneapolis, Minnesota, and Richard J. Bell of Bell Law Office, Mt. Pleasant, for appellants.

Michael Noyes and Judith L. Herrmann of Lane & Waterman, Davenport, Matthew M. Neumeier and Brian D. Hansen of Jenner & Block, L.L.C., Chicago, Illinois, for appellee.

Susan M. Boe and Michael A. Giudicessi of Faegre & Benson L.L.P., Des Moines, for amicus curiae Iowa Land Title Association, Iowa Association of Realtors, Iowa Bankers Association, and Iowa Mortgage Association.

Dennis A. Dietz, Des Moines, for amicus curiae Iowa Finance Authority.

LAVORATO, Chief Justice.

Timothy L. and Tammie S. Gardin, class action plaintiffs in this case, appeal from a district court ruling sustaining a summary judgment motion filed by the defendant, Long Beach Mortgage Company (Long Beach). The Gardins contend that the district court erred in concluding as a matter of law that Long Beach had not collected fees in violation of Iowa Code section 535.8 (1999) in connection with a loan it made to the Gardins. We affirm.

## I. Background Facts and Proceedings.

The Gardins entered into a loan brokerage agreement (Agreement) with Springfield Mortgage Company (SMC) on February 16, 1999. In the Agreement, the Gardins agreed to pay SMC a six-percent "loan commitment fee" if SMC successfully negotiated a loan for the Gardins. The loan was to be secured by a mortgage on residential real estate owned by the Gardins.

The Agreement further provided that the loan commitment fee "is a fee to the broker for its service on behalf of the borrower in obtaining the mortgage loan." Finally, the Agreement provided that "[t]he loan fee ... is an obligation of borrower upon commitment, and shall be paid at the time of the loan closing *or out of the loan proceeds* subject to the obligation of the borrower...." (Emphasis added.)

On the same day that it entered into the Agreement, the Gardins signed a "loan brokerage disclosure statement." The disclosure statement stated that SMC was licensed by the State of Iowa pursuant to Iowa Code section 535C.1 et seq. and "has been a mortgage broker of mortgage loans under the name of the broker since [1995]."

Acting pursuant to the Agreement, SMC made arrangements for the Gardins to borrow $39,750 from Long Beach. Long Beach is a wholesale lender and deals only with loan brokers.

SMC hired Rock Island County Abstract & Title Guarantee Company (RICA) as the closing agent for the loan. The closing occurred on May 20, 1999 at the Gardins' residence in Burlington, Iowa. A number of settlement charges were paid from the loan proceeds, all of which the Gardins included in the loan principal to be amortized over the life of the loan.

On July 13, 2000, the Gardins filed a class action against Long Beach, alleging violations of Iowa Code section 535.8. The statute limits charges that may be imposed on borrowers by lenders in connection with the purchase or financing of real property used for family dwellings. *See* Iowa Code § 535.8(2)(*a*), (*b*). The statute also provides borrowers with a private cause of action to recover all fees not permitted by the statute, together with attorney fees and costs. *See* Iowa Code § 535.8(2)(*d*).

Specifically, the Gardins alleged the following settlement charges paid out of the loan proceeds at the closing violated the statute: (1) a "loan origination" fee of $2,385, which exceeded two percent of the amount financed, in violation of Iowa Code section 535.8(2)(*a*); (2) an "underwriting fee" of $165.50, which was not an authorized charge under Iowa Code section 535.8(2)(*b*); (3) an "overnight fee" of $40, which was not an authorized charge under Iowa Code section 535.8(2)(*b*); (4) title

insurance charges of $250, payable to a title company other than the Iowa Finance Authority, which was a violation of Iowa Code section 535.8(2)(*b*)(10); and (5) a closing fee of $250, which was not agreed to in writing and was a violation of Iowa Code section 535.8(2)(*a*).

Later, Long Beach filed a motion for summary judgment, which the Gardins resisted. The district court sustained the motion and dismissed the case.

## II. Issues.

In its ruling the district court concluded that the $2,385 was a loan broker fee paid directly to SMC, and was therefore not paid to or collected by Long Beach in violation of the law. Similarly, the district court concluded that the $250 closing fee was paid directly to RICA and was therefore not paid to or collected by Long Beach in violation of the law. As for the remaining disputed amounts, the district court concluded that they accounted for less than two percent of the loan. Because the law allows a lender to collect up to two percent of the loan as a processing fee, the court concluded Long Beach could include the remaining disputed amounts in its processing fee.

The Gardins contend the district court (1) applied an unduly narrow meaning of the word "collect" as used in Iowa Code section 535.8; (2) erred in concluding that loan broker fees are not covered by the two percent limitation imposed by Iowa Code section 535.8(2)(*a*); (3) should have concluded as a matter of law that RICA acted as Long Beach's agent, rendering Long Beach vicariously liable for RICA's illegal charges; and (4) erred in concluding a lender may charge fees not otherwise permitted by Iowa Code section 535.8(2)(*b*) as long as the sum of such fees does not exceed two percent of the loan amount.

In their petition the Gardins challenged the title insurance charges of $250. This amount was paid to RICA and represented a $100 fee for a title insurance commitment and $150 for a title search and abstracting fees. On appeal, the Gardins do not dispute the $150 title search and abstracting fees. Instead, for the first time on appeal, the Gardins argue that a $75 location endorsement fee paid out of the loan proceeds at closing was charged in violation of Iowa Code section 535.8(2)(*b*)(10). Because they failed to raise this issue in the district court, the Gardins have waived it. *See Shill v. Careage Corp.*, 353 N.W.2d 416, 420 (Iowa 1984) ("It is a basic rule of appellate practice that questions not presented to and not passed on by the trial court cannot be raised or reviewed on appeal.").

## III. Scope of Review.

We review a summary judgment ruling for correction of errors at law. Iowa R.App. P. 6.4; *Sons of the Union Veterans of the Civil War v. Griswold Am. Legion Post 508*, 641 N.W.2d 729, 731 (Iowa 2002). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3); *Grinnell Mut. Reinsurance Co. v. Jungling*, 654 N.W.2d 530, 535 (Iowa 2002). We examine the record before the district court to determine whether any genuine issue of material fact exists and whether the court correctly applied the law. *Sons of the Union Veterans*, 641 N.W.2d at 731. Where the only controversy concerns the legal consequences flowing from undisputed facts, summary judgment is the proper remedy. *Am. Processing, Inc. v. Iowa Comprehensive Petroleum*

*Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 329 (Iowa 1998). Summary judgment is the appropriate remedy where questions of statutory interpretation are involved. *Burton v. Univ. of Iowa Hospitals & Clinics*, 566 N.W.2d 182, 185 (Iowa 1997).

## IV. Statutory Interpretation.

█ Because our resolution of the issues involves statutory interpretation, we revisit several basic rules of statutory interpretation. We start with the often-repeated goal of statutory interpretation which is to discover the true intention of the legislature. *Bernau v. Iowa Dep't of Transp.*, 580 N.W.2d 757, 761 (Iowa 1998).

█ Our first step in ascertaining the true intention of the legislature is to look to the statute's language. *Id.* We do not search beyond the express terms of a statute when that statute is plain and its meaning is clear. *State v. Snyder*, 634 N.W.2d 613, 615 (Iowa 2001). Moreover, we must read a statute as a whole and give it "its plain and obvious meaning, a sensible and logical construction." *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980). Additionally, we do not construe a statute in such a way that would produce impractical or absurd results. *United Fire & Cas. Co. v. Acker*, 541 N.W.2d 517, 519 (Iowa 1995).

█ When the legislature has not defined words of a statute, we look to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage. *Bernau*, 580 N.W.2d at 761.

## V. Statutory Scheme at Issue.

Iowa Code section 535.8(2)(*a*) provides that "[a] lender may collect" certain fees. These include a "loan processing fee," which does not exceed two percent of the loan principal. The term "loan processing

fee" is not defined in the statute. The lender may also collect a "commitment fee" as agreed to in writing by the parties, without limitation as to the amount of the fee. The statute describes this fee as "compensation to the lender solely for the use of money." The fee may be collected in addition to the "loan processing fee." Finally, the lender may collect a "closing fee" as agreed to in writing by the parties, without limitation as to the amount of the fee. The closing fee may be collected in addition to the "commitment fee," and/or the "loan processing fee."

Iowa Code section 535.8(2)(*b*) permits a lender to

collect in connection with a loan any of the following costs which are *incurred by the lender* in connection with the loan and which are *disclosed to the borrower:*

(1) Credit reports.

(2) Appraisal fees....

(3) Attorney's opinions.

(4) Abstracting fees....

(5) County recorder's fees.

(6) Inspection fees.

(7) Mortgage guarantee insurance charge.

(8) Surveying of property.

(9) Termite inspection.

(10) The cost of a title guaranty issued by the Iowa finance authority pursuant to chapter 16.

. . . .

*Collection of any cost other than as expressly permitted by this lettered paragraph is prohibited.*

Iowa Code § 535.8(2)(*b*) (emphasis added).

Iowa Code chapter 535B applies to mortgage bankers and brokers. "Mortgage banker" and "mortgage broker" are both defined in the statute. *See* Iowa Code § 535B.1(4), (5). Generally, a "mortgage banker" is one who makes at least

four residential mortgage loans per year in Iowa. Iowa Code § 535.1(4). A "mortgage broker" is one who "arranges and negotiates" at least four residential mortgage loans per year in Iowa. Iowa Code § 535.1(5). Both are required to obtain a license from the superintendent of the division of banking of the department of commerce and both may have such license suspended or revoked for violating, among other provisions of law, chapters 535 and 535A. *See* Iowa Code §§ 535B.4, 535B.7.

Iowa Code chapter 535C applies to loan brokers. Iowa Code section 535C.2(4)(*j*) specifically excludes from the definition of "loan broker" a "mortgage broker or mortgage banker licensed or registered under chapter 535B." Pursuant to chapter 535C, a loan broker may collect a fee from a borrower after successfully procuring a loan in accordance with a written broker agreement between the broker and the borrower. *See* Iowa Code §§ 535C.2A (loan broker's fee may be assessed or collected from a borrower only after the successful procurement of a loan); .7 (loan brokerage agreement shall be in writing, signed by broker and borrower).

## VI. Broker Fee.

█ As mentioned, the district court concluded the $2,385 was a loan broker fee paid directly to SMC, and was not paid to or collected by Long Beach; therefore, Long Beach did not violate section 535.8(2).

The Gardins concede the $2,385 fee, which they describe as a "loan origination fee" or a "loan processing fee," was paid directly to SMC. However, they contend that Long Beach "collects" that fee from the Gardins because the loan itself was the source of the funds used to pay it. Therefore, the Gardins contend, Long Beach necessarily "collects" the fee from them over the life of the loan with interest.

They argue (1) the term "collect" refers to all settlement charges "collected" by the lender from the borrower in the form of monthly payments and (2) the excessive charges, to whomever paid, ultimately redound to the benefit of the lender.

To resolve this issue, we need look no further than the plain language of the statutes and the agreement between the Gardins and SMC. Reading the statutory scheme as a whole, it is plain to us that Long Beach did not "collect" the six-percent broker fee from the Gardins.

As a preliminary matter, we think the record is not clear enough to make a determination as to whether SMC was a loan broker as defined in section 535C.2(4) or a mortgage broker as defined in section 535B.1(5). Whether it was one or the other, our ultimate conclusion is the same.

Section 535.8 does not define the terms "lender" or "collect." We therefore look to their common meaning. "Lender" is defined as "a person or entity from which something (esp.money) is borrowed." *Black's Law Dictionary* 913 (7th ed.1999); *see also Webster's Encyclopedic Unabridged Dictionary* 1101 (1996) (defining "lend" as "to give (money) on condition that it is returned and that interest is paid for its temporary use"). Given these definitions, we conclude Long Beach was clearly the "lender" in this transaction.

"Collect" is defined as "to receive payment." *Black's Law Dictionary* 238 (5th ed.1979); *see also Webster's Encyclopedic Unabridged Dictionary* 403 (defining "collect" as "to receive payment"). As mentioned, the Gardins concede the six-percent fee was paid directly to SMC. Under the plain meaning of "collect," Long Beach clearly did not receive the payment; SMC did. Therefore, Long Beach did not "collect" this fee and for that reason did not violate section 535.8(2)(*a*).

The Gardins' argument that Long Beach "collected" the fee because the loan was the source of the funds used to pay it leads to an absurd result. The Gardins admitted they understood they were paying a "finders fee" to SMC. Further, the Agreement gave them the choice of whether to pay the fee out of the proceeds of the loan or by a separate check at the closing. Their decision to pay the fee out of the proceeds of the loan should not dictate the outcome of this case. The lender—which in this case was not a party to the Agreement between the Gardins and SMC—should not be held liable for a choice the *borrower* made as to how the broker fee was to be paid.

The district court correctly adopted a narrow definition of "collect," according to the plain meaning of the statute. If the legislature intended for "collect" to have a broader meaning, it should have said so. *See Krull v. Thermogas Co.*, 522 N.W.2d 607, 612 (Iowa 1994) (in searching for legislative intent, the court is bound by what the legislature said, not by what it should or might have said).

### VII. Closing Fee.

Using the same reasoning as it did in regard to the broker fee, the district court concluded Long Beach did not "collect" the $250 closing fee paid to RICA; therefore, Long Beach did not violate section 535.8(2)(*a*).

As they did in regard to the broker fee, the Gardins argue that Long Beach "collected" this fee because the loan itself was the source of the funds used to pay it. For their fallback position, the Gardins contend RICA was an agent of Long Beach as a matter of law, and therefore "collected" the fee on Long Beach's behalf. They do not dispute the district court's finding that the $250 closing fee was paid directly to RICA for its services as closing agent.

The same reasoning we applied to the broker fee applies here. The undisputed facts show that Long Beach did not receive the $250 closing fee; RICA did. Long Beach therefore did not "collect" this fee.

Turning to the Gardins' agency argument, we note that they have the burden of proving RICA was Long Beach's agent and for that reason Long Beach was vicariously liable for the collection of unpermitted fees paid to RICA. *See Benson v. Webster*, 593 N.W.2d 126, 130 (Iowa 1999). We recognize an agency relationship exists when there is (1) a manifestation of consent by one person (here Long Beach) that another (RICA) shall act on the former's behalf and subject to the former's control and (2) the consent of the latter to so act. *Id.* The key to determining whether an agency relationship exists is the principal's right of control. *Id.*

To establish the alleged agency relationship, the Gardins rely on instructions Long Beach forwarded to all closing agents, including RICA, to follow to ensure compliance with applicable laws pertaining to fees.

For reasons that follow, we conclude as a matter of law there was no agency as the Gardins contend. We first note the district court found as undisputed facts that (1) Long Beach did not hire RICA, rather SMC did; and (2) there was no ongoing or established business relationship between Long Beach and RICA. Therefore evidence of consent to act as well as evidence of control was lacking.

Moreover, we do not view Long Beach's action in sending the closing instructions to RICA as raising any material fact issue on the question of agency. We conclude that because RICA was collecting the fee on its *own* behalf for services *it* performed,

it was not collecting the fee for Long Beach for any of its services. The underlying premise of the Gardins' argument is that Long Beach received the fees through the Gardins' actions in rolling all the settlement charges into the loan, an argument we have previously rejected.

## VIII. Remaining Charges.

The remaining disputed charges include the $175 title insurance, $40 overnight fees, and $165 underwriting fee. As to these charges, the district court concluded that because the total of these charges equaled less than two percent of the loan, the provisions of section 535.8(2)(*a*) had not been violated regardless of which party had "collected" the disputed amounts. The Gardins contend it was error for the district court to bundle these charges together as it did to meet the two percent limitation.

 Whether or not the district court was correct in treating these charges as it did, we reach the same result as the district court by treating each charge separately. The undisputed fact is that RICA received payment for the title insurance ($175) and the overnight fees ($40). Based on our previous analysis, Long Beach—as a matter of law—did not "collect" these amounts.

 The remaining amount in dispute—the $165 "underwriting fee"—was collected by Long Beach. This fee was charged to compensate Long Beach for processing the Gardins' loan. It is therefore a "loan processing fee" that must fit within the two percent limit of section 535.8(2)(*a*). This amount—the only loan processing fee that Long Beach "collected"—is well within the two percent limit. Therefore, collection of the fee does not violate section 535.8(2)(*a*).

## IX. Disposition.

Based on the plain meaning of Iowa Code section 535.8(2)(*a*), we conclude that Long Beach did not "collect" most of the fees of which the Gardins complain in this case. As for the "underwriting fee," which Long Beach did collect, the collection of that fee was well within the two percent limit of Iowa Code section 535.8(2)(*a*). For that reason, the collection of that fee did not violate section 535.8(2)(*a*). Because we find no error in the district court's summary judgment ruling, we affirm.

**AFFIRMED.**