STATE of Iowa, Appellee,

v.

**Timothy A. RHINER, Appellant.**

**No. 99–1854.**

Supreme Court of Iowa.

Sept. 4, 2003.

Rehearing Denied Oct. 28, 2003.

Kermit L. Dunahoo of Dunahoo Law Firm, P.C., Des Moines, and Timothy A. Rhiner, pro se, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, John P. Sarcone, County Attorney, and John Courter, Assistant County Attorney, for appellee.

LAVORATO, Chief Justice.

In a bench trial, the district court found the defendant Timothy R. Rhiner guilty of conspiracy to manufacture a controlled substance and failure to possess a drug tax stamp. Rhiner appealed, raising a number of issues as well as claims of ineffective assistance of counsel. We transferred the case to the court of appeals and that court affirmed.

We granted Rhiner's application for further review. We now hold that the court of appeals correctly decided all of the issues save one. As to the one exception, we conclude the conviction on the drug tax stamp charge cannot stand. We therefore vacate the court of appeals decision on the drug tax stamp conviction and sentence, reverse the district court's judgment of conviction and sentence on this charge, and remand for resentencing. We affirm the decision of the court of appeals on all the other issues as well as on Rhiner's claims of ineffective assistance of counsel. We also affirm the district court's judgment of conviction on the conspiracy charge.

I. **Background Facts and Proceedings.**

In the early evening hours of July 4, 1998, Des Moines Police Officer Gregory Dickel was on routine patrol. The officer was traveling west on Army Post Road in Des Moines, Iowa, when he saw a vehicle coming towards him. The vehicle crossed the centerline. Rhiner was driving the vehicle and Frank Nucaro was a front seat passenger. As the vehicle passed the officer's patrol car, the officer saw a large cloud of smoke coming from the vehicle's exhaust and noticed the vehicle's muffler was unusually loud. The officer turned his patrol car around and began pursuing the vehicle. When the officer got closer to the vehicle, he saw its two occupants reach over their shoulders and pull their seat belts across their bodies.

Eventually the officer stopped the vehicle. As he exited his patrol car, the officer detected what he believed was a smell of ether. The officer asked Rhiner to exit

the vehicle and step away from it and told Nucaro to put his hands on the dashboard.

As the officer escorted Rhiner back to the patrol car to issue citations, the officer saw Nucaro reach back behind the seat and pull a blanket over something in the backseat. The officer secured Rhiner in the backseat of the patrol car by handcuffing him and then asked Nucaro to exit the vehicle. The officer conducted a pat-down search of Nucaro and placed him in handcuffs. The officer then looked inside the vehicle and saw a black bag on the passenger floorboard with a container of clear liquid. He reached in and pulled back the open-zippered bag to see what was in the container. The officer—a certified drug recognition expert—backed away from the vehicle, thinking it possibly contained a methamphetamine laboratory. According to the officer, such laboratories are very volatile and potentially explosive.

At this point, the officer called in the State Clandestine Laboratory Enforcement Team to investigate. Officers from that team searched the vehicle and found items consistent with the manufacture of methamphetamine. Officer Dickel eventually arrested Rhiner and Nucaro at the scene. The vehicle was later impounded and eventually sold after its registered owner, Steven Sheeley, failed to claim it.

Drug testing of samples of the liquid from the container in the vehicle confirmed the liquid contained between 9.5 and 9.9 grams of methamphetamine. However, the liquid was in step three of five in the manufacture of a usable form of methamphetamine.

The State charged Rhiner with numerous drug offenses. Later, Rhiner filed a motion to suppress all of the evidence taken in the search of the vehicle. He also filed a motion to dismiss in which he alleged prosecutorial misconduct and destruction of evidence. In addition, Rhiner filed a motion to compel disclosure of the identity of the passenger who was in Officer Dickel's patrol car at the time of the stop. The district court denied the motions. Later the district court denied Rhiner's renewed motion to compel disclosure of the identity of the passenger who was in Officer Dickel's patrol car.

Eventually, Rhiner was tried on stipulated evidence in a bench trial. Before any evidence was presented, Rhiner's counsel argued that the purity of the methamphetamine was less than was necessary to trigger the drug tax stamp requirement and that he should only be responsible for half the amount of the methamphetamine because there were two people in the vehicle. He also argued that the drug tax stamp requirement did not apply because the methamphetamine was in an unfinished state.

The district court rejected these arguments and found Rhiner guilty of conspiracy to manufacture a controlled substance in violation of Iowa Code section 124.401(1)(c)(6) (Supp.1997) and failure to possess a drug tax stamp in violation of Iowa Code sections 453B.3 and 453B.12 (1997).

Following the district court's ruling, Rhiner's counsel filed a motion in arrest of judgment, alleging newly discovered evidence. Later, Rhiner's counsel filed a motion for new trial in which he raised issues related to the motion to suppress and destruction of evidence. The motion also requested testing of drug samples by an independent laboratory. Finally, the motion again raised the same issues related to the drug tax stamp that counsel raised before evidence was taken in the trial.

In a pro se addendum to the motion in arrest of judgment, Rhiner raised, among other things, issues of prosecutorial misconduct. Rhiner also filed a second pro se

addendum to the motion in arrest of judgment.

The district court denied all the motions, and sentenced Rhiner to ten years on the conspiracy conviction and five years on the drug tax stamp conviction. The court ordered the sentences to run consecutively.

Rhiner appealed, contending the district court erred in (1) overruling his motions to suppress and dismiss, (2) overruling his motion in arrest of judgment based on newly discovered evidence, (3) denying his motion for new trial, and (4) denying his renewed motion to compel the State to identify the passenger in the patrol car with Officer Dickel at the time of the stop. Rhiner also raised numerous claims of ineffective assistance of counsel.

The court of appeals affirmed the convictions, rejecting all of Rhiner's contentions including his claims of ineffective assistance of counsel. We granted Rhiner's application for further review in which he raised all of the same issues as well as all of his claims of ineffective assistance of counsel.

We conclude, with one exception, that the court of appeals correctly decided all of the issues, including the claims of ineffective assistance of counsel. We therefore give no further consideration to those issues and the claims of ineffective assistance of counsel. The one exception relates to the drug tax stamp conviction, which we now proceed to consider.

## II. The Drug Tax Stamp Conviction.

■ On this issue, Rhiner's contention is simply that the drug tax stamp law does not apply because the methamphetamine here was in an unfinished form. For reasons that follow we agree.

■ Because our resolution of this issue turns on statutory interpretation, our review is for correction of errors at law.

*State v. Snyder,* 634 N.W.2d 613, 615 (Iowa 2001).

■ Our ultimate goal in interpreting statutes "is to discover the true intention of the legislature, considering the clearly stated objects and purposes involved." *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998). We will not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear. *Snyder,* 634 N.W.2d at 615. When the explicit terms of a statute are ambiguous, we will resort to rules of statutory construction. *City of Waukee v. City Dev. Bd.,* 590 N.W.2d 712, 717 (Iowa 1999). In searching for legislative intent, we are bound by what the legislature said, not by what it should or might have said. *Krull v. Thermogas Co.,* 522 N.W.2d 607, 612 (Iowa 1994). "Where the legislature has not defined the words of the statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Bernau,* 580 N.W.2d at 761.

Iowa Code chapter 453B deals with imposing an excise tax on unlawful dealing in certain substances. *See generally* Iowa Code ch. 453B. Iowa Code section 453B.3 of that chapter provides in relevant part:

A dealer shall not possess, distribute, or offer to sell a taxable substance unless the tax imposed under this chapter has been paid as evidenced by a stamp, label, or other official indicia permanently affixed to the taxable substance.

Taxes imposed on taxable substances by this chapter are *due and payable immediately upon manufacture* . . . .

Iowa Code § 453B.3 (emphasis added).

A "taxable substance" means, among other things, "a controlled substance." Iowa Code § 453B.1(10). Methamphetamine is a controlled substance. *See* Iowa Code §§ 124.101(5), 124.206(4)(*b* ).

A dealer means "any person who ... manufactures ... seven or more grams of a taxable substance...." Iowa Code § 453B.1(3)(*a*). The methamphetamine here was more than seven grams.

According to the first paragraph of section 453B.3, the drug tax stamp is required to show that the tax imposed under Iowa Code section 453B.7 has been paid. In the second paragraph of section 453B.3, the tax is due and payable immediately upon manufacture. Iowa Code § 453B.3.

Chapter 453B does not define "manufacture," so we resort to its common meaning. *Gardin v. Long Beach Mtg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003). The common meaning of "manufacture" is "to make (as raw material) into a product suitable for use." *Webster's Third New International Dictionary* 1378 (2002). Payment is not due and therefore a drug tax stamp is not required until the drug manufacturing process is completed. This is so because unless the manufacturing process is completed the controlled substance is not suitable for use.

If the legislature intended to require a drug tax stamp on methamphetamine in its unfinished state, it knew how to do so. For example, chapter 453B distinguishes between unprocessed and processed marijuana plants. *See* Iowa Code §§ 453B.1(2)(*b*) and (*c*), (8), (11).

Nila Bremer, a criminalist for the Iowa Department of Public Safety, analyzed the samples of the liquid taken from the vehicle Rhiner was driving. The liquid contained methamphetamine, pseudoephedrine, engine starting fluid, and the by-product CMP (1–(1', 4'–cyclohexadienyl)—2–methylaminopropane). According to Bremer, the liquid seized was at step three of five steps required in the manufacture of methamphetamine. The two additional steps to complete the process required the addition of hydrogenchloride gas, filtering, and drying it down. Until then, there is no completed product.

From Bremer's testimony, it is clear that the manufacturing process necessary to make the drug a usable product had not been completed at the time of the seizure. The drug tax stamp was therefore not required. Consequently, we conclude the drug tax stamp conviction cannot stand.

Accordingly, we vacate the court of appeals decision on the drug tax stamp conviction and sentence, reverse the district court judgment of conviction and sentence on this charge, and remand for resentencing. We affirm the decision of the court of appeals on all the other issues as well as on Rhiner's claims of ineffective assistance of counsel. We also affirm the district court's judgment of conviction on the conspiracy charge.

**COURT OF APPEALS DECISION VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT REVERSED IN PART AND AFFIRMED IN PART; CASE REMANDED.**