# IN THE COURT OF APPEALS OF IOWA

No. 16-0163
Filed March 8, 2017

**FOUR OAKS FAMILY AND CHILDREN'S SERVICES and TIM CART,**
        Plaintiffs-Appellees,

**vs.**

**IOWA DEPARTMENT OF EDUCATION, BUREAU OF NUTRITION AND HEALTH SERVICES,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Christopher L. Bruns,

Judge.


        An administrative agency appeals the district court's decision on judicial

review.  **REVERSED.**



        Thomas J. Miller, Attorney General, and Meghan L. Gavin, Assistant

Attorney General, for appellant.

        Nancy J. Penner and Steven J. Pace of Shuttleworth & Ingersoll, P.L.C.,

Cedar Rapids, for appellees.



        Heard by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VOGEL, Judge.**

The Iowa Department of Education and its Bureau of Nutrition and Health Services (the Department) claim the district court erred in its judicial review decision reversing the Department's decision to pursue termination of Four Oaks Family and Children Services' (Four Oaks) participation in the Child and Adult Care Food Program (the CACFP) and to place Four Oaks on the national disqualified list. Because we agree that federal law allowed the Department to terminate Four Oaks's participation in the CACFP and place it on the national disqualified list, we reverse the district court's judicial-review decision.

## I.      Background Facts and Proceedings

Four Oaks is a nonprofit organization that offers services related to child welfare and juvenile justice, such as afterschool childcare and other community-based prevention programs. Four Oaks participates in the CACFP, which reimburses daycare providers for meals and snacks given to children and adults. The CACFP was created by the Federal Agricultural Risk Protection Act and is administered in Iowa by the Department.

Four Oaks operates two facilities that participate in the CACFP, one in Cedar Rapids and one in Iowa City. On August 30, 2012, the Department conducted an unannounced visit at Four Oaks's Cedar Rapids facility. The Department employee who conducted the review noted several issues and discussed them with Tim Cart, the Four Oaks employee responsible for managing the program. On September 27, 2012, the Department initiated an administrative review of Four Oaks's CACFP records. On October 11, Four

Oaks emailed the Department and voluntarily terminated its participation in the CACFP program at the Cedar Rapids facility retroactive to August 31.

On October 25, the Department issued a citation to Four Oaks, which cited "serious deficiencies" with Four Oaks's participation in the CACFP, including: failure to operate the program in conformance with the performance standards set forth in paragraph (b)(18)(iii) of the program accountability section of the agreement; failure to maintain program operations that met CACFP requirements following staff turnover; failure to maintain fiscal integrity and accountability under 7 C.F.R. section 226.15(e) and failure to process claims accurately; failure to maintain adequate records; and failure to provide adequate and regular training or monitor sponsored facilities in accordance with section 226.16(d) of the agreement.[1]  The citation directed Four Oaks to complete corrective actions within one month or risk being terminated from the program and placed on the national disqualified list.  Four Oaks did not complete the necessary corrective actions, claiming it was unable to do so because it was no longer participating in the CACFP.  On December 7, the Department proposed termination of Four Oaks's ability to participate in the CACFP and disqualification from future participation by placement on the national disqualification list.

On January 29, 2013, Four Oaks filed its appeal of the Department's decision.  Four Oaks argued the Department's decision was improper because it had already voluntarily terminated its participation in the CACFP in an October

---

[1] After the citation was issued, Four Oaks voluntarily terminated its participation in the CACFP Program at the Iowa City facility retroactive to September 30, 2012.

11 email, prior to the Department's formal notice of deficiency on October 25.

Following a contested hearing, an administrative law judge (ALJ), determined:

> The evidence presented here amply supports a finding that Four Oaks was seriously deficient in the management of the CACFP program and further that Four Oaks failed to attempt to correct the serious deficient practices with which it was cited during the site visit on August 31, 2012, and the administrative review on September 27, 2012.

In response to Four Oaks's argument it voluntarily terminated its participation prior to the Department's notice, the ALJ held:

> The undersigned understands that Four Oaks has taken the position that it voluntarily decided to terminate its participation in the CACFP program. However, this decision to terminate only came about after the August 30, 2012, site visit where several serious deficiencies in the program were already noted. Only compounding the issue is the fact that Four Oaks claimed meals through August 31, 2012. Four Oaks is accountable for the operation of this program through August 31, 2012.

Ultimately, the ALJ upheld the Department's decision.

Four Oaks then sought judicial review of the Department's decision in district court. On February 14, 2013, the district court reversed the decision of the Department. Initially, the court determined Four Oaks had terminated its participation in the CACFP prior to the Department issuing the citation of serious deficiencies. The court then turned to whether the applicable federal regulations allowed the Department to pursue termination of Four Oaks's participation in the program when Four Oaks had voluntarily terminated its participation prior to receiving the citation for serious deficiency. The court looked to the text of 7 C.F.R. section 226.6(c)(3)(iii)(A)(6):

> That the institution's voluntary termination of its agreement with the State agency *after* having been notified that it is seriously deficient will still result in the institution's formal termination by the State

agency and placement of the institution and its responsible principals and responsible individuals on the [n]ational disqualified list.

(Emphasis added.) Based on the emphasized language, the court reasoned: "The [United States Department of Agriculture's (USDA)] choice to include this language in the regulation reflects USDA's intent to allow formal termination and placement on the [n]ational [d]isqualified [l]ist only when the termination follows receipt of a notice of serious deficiency." Accordingly, the court reversed the Department's decision and ordered it to rescind the formal termination of Four Oaks's participation in the CACFP and remove Four Oaks from the national disqualified list. The Department appeals.

## II.    Standard of Review

When reviewing a district court's review of an agency decision, the "standard of review depends on the aspect of the agency's decision that forms the basis of the petition for judicial review." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012). When the petition claims the agency's decision was "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency," we review the decision for errors at law. Iowa Code § 17A.19(10)(c) (2016); *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006).

## III.    Interpretation of Federal Law

Both parties agree the outcome of this case depends on the interpretation of the federal regulatory scheme that governs the CACFP. The Department argues federal law allows, and what is more requires, it to seek formal termination of an institution's agreement to participate in the CACFP when the

Department determines serious deficiencies existed and were not corrected. Four Oaks offers a different interpretation of the applicable federal law, claiming the regulations preclude the Department from seeking formal termination when an institution has voluntarily terminated its participation *prior* to written notice of serious deficiencies.

When interpreting federal law, we give consideration to federal decisions, but we have the authority to decide the issue on our own interpretation of federal law. *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 460 (Iowa 2000). In interpreting a statute, our primary goal is to determine the intention of the legislature. *Gardin v. Long Beach Mortg., Co.*, 661 N.W.2d 193, 197 (Iowa 2003). When the language of the statute is plain and unambiguous, we look no further. *Id.* We read statutes and statutory schemes as a whole and seek to give them their "plain and obvious meaning, a sensible and logical construction." *Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980). "Additionally, we do not construe a statute in such a way that would produce impractical or absurd results." *Gardin*, 661 N.W.2d at 197. Further, "when a literal interpretation of a statute results in absurd consequences that undermine the clear purpose of the statute, an ambiguity arises." *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 427 n.8 (Iowa 2010).

The CACFP was created by 42 U.S.C. § 1766. The program is overseen, on a federal level, by the USDA, which is tasked with establishing criteria for the termination of an institution's participation in the CACFP. 42 U.S.C. § 1766(a)(1)(B), (d)(1)(E)(iii). The USDA accomplishes that task partially by promulgating regulations in the Code of Federal Regulations (the C.F.R.).

Both parties argue we should accept their interpretation of the regulations' impact on the issue raised in this appeal. In asserting the regulations governing administration of the CACFP required it to seek termination and placement on the national disqualified list, the Department relies on 7 C.F.R. section 226.6(c)(3)(i):

> If the State agency determines that a participating institution has committed one or more serious deficiency listed in paragraph (c)(3)(ii) of this section, the State agency must initiate action to terminate the agreement of a participating institution and initiate action to disqualify the institution and any responsible principals and responsible individuals.

In response, Four Oaks notes that by the time the serious deficiencies were officially "determined" they were no longer a participating institution and urges this court to follow the district court's reasoning relying on the previously quoted portion of 7 C.F.R. section 226.6(c)(3)(iii)(A)(6).

Upon our review of the applicable federal laws and regulations, we are persuaded the Department's interpretation is the correct interpretation. We find the language of 7 C.F.R. section 226.6(c)(3)(i) required the Department to initiate the process of terminating Four Oaks's agreement if it determined Four Oaks committed serious deficiencies and failed to correct them. That process began with the site visit by the Department employee on August 30, 2012, when Four Oaks was undisputedly still participating in the CACFP. It continued with the initiation of an administrative review on September 27 and a notice of serious deficiency on October 25.

Four Oaks asserts the time gap between the initial visit and the formal notice gave them a window to voluntarily terminate the agreement and avoid

formal termination and placement on the national disqualified list. We find this interpretation inconsistent with the regulatory scheme as a whole and that such a reading would lead to an absurd result. We do not read the applicable regulations to be so rigid as to require the Department to become aware of potential serious deficiencies, investigate them, and make a determination in a manner quick enough to ensure that institutions and individuals that have committed serious deficiencies cannot avoid the appropriate penalties simply by voluntarily terminating their agreement. *See Goldstar Med. Servs., Inc. v. Dep't of Social Servs.*, 955 A.2d 15, 26 (Conn. 2008) ("The plaintiffs' contention that a provider can place itself beyond the reach of these strong statutory sanctions and provisions simply by terminating its provider agreement on thirty days notice, defies logic and requires a construction of the statute that thwarts its intended purpose, and leads to an absurd result.").

7 C.F.R. section 226.6(c)(3)(iii)(A) requires a notice of serious deficiency to "identify the responsible principals and responsible individuals," provide notice of corrective actions to be take, if applicable, as well as provide notice of seven other facts relevant to the determination and review process. Preparation of such a notice could only follow a thorough investigation—a preferable procedure than a rush to judgment. It strikes us as absurd that institutions and individuals could thwart the investigation process and appropriate penalty simply by voluntarily terminating their agreement once they discover they are under investigation but before official notice of a final determination was provided. Such a reading of the applicable law could lead to inspections being hurriedly memorialized in an effort to beat a defensive move by the violating institution.

*See id.* ("If the plaintiffs' interpretation of § 17b–99 (c) were to prevail, a provider could insulate itself from any sanction at all, even an order for restitution, simply by terminating the provider agreement as soon as it receives notice that an audit is to be conducted. As the trial court noted, the provider could 'simply jump in and out of the program upon discovery of impropriety.' We cannot conclude that our legislature could have intended to permit a result so incongruous with the clear intention of § 17b–99 (c)."). Here, August 30 was the date of the observed violations, and to the Department's credit, those violations were first discussed with a Four Oaks employee and then carefully considered before a formal determination was made, warranting a notice of deficiency.

The district court agreed with Four Oaks's argument that its interpretation is supported by 7 C.F.R. section 226.6(c)(3)(iii)(A)(6), which requires the Department to inform an institution in its notice of deficiency that voluntary termination after receiving the notice will not prevent formal termination and placement on the national disqualified list. Four Oaks urges that the explicit reference to voluntary termination *after* notice implies that voluntary termination *before* notice does prevent the process from continuing. We disagree with Four Oaks's reasoning based on the context of the particular provision. 7 C.F.R. section 226.6(c)(3)(iii)(A)(6) appears in the list of notices that must be provided with the serious deficiency determination and, hence, is not particularly enlightening to the pre-determination context. *See* 7 C.F.R. § 226.6(c)(3)(iii)(A). We do not agree that this provision implies an institution or an individual may stop the investigation of potential serious deficiencies by voluntary termination when they have not yet received the formal notice. Accordingly, we reject the

district court's and Four Oaks's interpretation of the federal law and regulations applicable to the Department's termination of Four Oaks's participation in the CACFP and the Department's placement of Four Oaks on the national disqualified list.

### IV.    Conclusion

Because we agree with the Department that federal law allowed it to terminate Four Oaks's participation in the CACFP and place it on the national disqualified list, we reverse the district court's judicial-review decision.

**REVERSED.**