**IN THE COURT OF APPEALS OF IOWA**

No. 21-1365
Filed August 31, 2022

**A.Y. MCDONALD INDUSTRIES, INC,**
    Plaintiff-Appellee,

**vs.**

**MICHAEL B. MCDONALD,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica L. Zrinyi
Ackley, Judge.


        Michael McDonald appeals the denial of his motion to quash a garnishment
by A.Y. McDonald Industries, Inc.  **AFFIRMED IN PART AND REVERSED IN
PART.**



        Brian J. Kane, Todd L. Stevenson, and Nicholas J. Kane of Kane, Norby &
Reddick, P.C., Dubuque, for appellee.

        Susan M. Hess of Hammer Law Firm, PLC, Dubuque, for appellant.


        Considered by Greer, P.J., Schumacher, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206
(2022).

**GREER, Judge.**

The saga over the collection of stolen funds continues.[1]  Now the issue is narrowed to whether funds held by two spendthrift trusts have been distributed to the debtor so that collection of the monies by the creditor can occur.  A succinct history from the bankruptcy court gives context:

> The facts of this case are not in dispute.  Michael B. McDonald ("Debtor" or "Appellee") was formerly a member of the board of directors and an officer of [A.Y. McDonald Industries, Inc. (A.Y.)], as well as an employee of a subsidiary.  Debtor was fired or resigned after it was discovered that he had used his position as senior vice president to misappropriate funds.  Debtor agreed to pay restitution to [A.Y.] by executing a restitution agreement and a promissory note.  The restitution agreement required Debtor to liquidate certain property to make payments on the note, which he failed to do.  Subsequently, Debtor and [A.Y.] executed an amendment to the restitution agreement.  The amendment required Debtor to sign a power of attorney.  Under the power of attorney, the appointed attorney-in-fact would collect distributions Debtor had been receiving from two spendthrift trusts and turn the funds over to [A.Y.].  In turn under the amendment to the restitution agreement, [A.Y.] agreed to cease its collection activities as long as Debtor was in compliance.

*In re McDonald*, 590 B.R. 506, 508 (B.A.P. 8th Cir. 2018).  After the bankruptcy court disagreed with Michael and determined the debt was non-dischargeable, the disputes between these parties focused on collection of the missing money.[2]  *Id.* Collection against Michael targeted two spendthrift trusts[3] that previously

---

[1] We previously resolved several issues impacting the collection activity in *A.Y. McDonald Indus., Inc. v. McDonald*, No. 20-0766, 2021 WL 3076322 (Iowa Ct. App. July 21, 2021).

[2] The bankruptcy court stay lifted on November 19, 2018.

[3] *See In re Bucklin's Est.*, 51 N.W.2d 412, 414 (Iowa 1952) (defining a valid spendthrift trust as one where the beneficiary is entitled to the income and "his interest shall not be transferable by him and shall not be subject to the claim of his creditors" (citation omitted)).

distributed funds to Michael. All came apart when Michael revoked his limited power of attorney allowing distributions and those payments ceased.

When we last saw this case, we sorted out the claims made by both of these parties and arrived at the decision that Michael breached the restitution agreement between himself and A.Y.; we denied all counterclaims brought by Michael against the company and reversed the grant of A.Y.'s request for a permanent injunction. *McDonald*, 2021 WL 3076322, at *3–8. We reversed the district court order enforcing the limited power of attorney and its restraint on the spendthrift trust distributions. *Id.* More germane to this appeal, we also held that Michael could not bind future distributions from the spendthrift trusts with an irrevocable transfer or assignment. *Id.* at *6. But, as to current distributions, we said:

> True, "[s]pendthrift protection prevents anticipation of the beneficiary's rights but does not extend beyond the point of distribution." "More particularly, the beneficiary cannot transfer [his] right to future payments from the trust, nor can the beneficiary's creditors collect future trust payments due to the beneficiary. The creditors can only collect after the trust has *paid or distributed property* to the beneficiary."

*Id.* at *4 (alteration in original) (emphasis added) (internal citations omitted).

After our decision, A.Y. resumed collection activities and Michael protested, arguing the trusts had not "distributed" funds to him so the spendthrift protections under Iowa Code section 633A.2302(2) (2021) remained. A.Y. characterized each trust's actions as a "distribution" of the funds. The district court resolved this new dispute by authorizing the collection of Michael's funds held by trusts and denied Michael's motion to quash the garnishment. In September 2021, Michael timely appealed that ruling.

To attack Michael's position, A.Y. contends that the trusts have effectively distributed funds to Michael that are now available for garnishment—the Delos L. McDonald Trust set aside funds within the trust for Michael, and the J. Bruce McDonald Trust set up a subaccount containing Michael's funds. Both trusts issued K-1 tax forms to Michael confirming the total annual allocation to him but contend that they have not made distributions to Michael. Each contends the trust distributions are not mandatory; rather, the trusts have discretion to distribute funds. At the hearing on the garnishment proceeding involved here, A.Y. argued that in a prior garnishment proceeding the district court ruled in its February 18, 2019 order that the J. Bruce McDonald Trust subaccount funds were not protected by the spendthrift trust when they were meant to be distributed. Michael did not appeal the February 2019 ruling. Pointing to the "law of the case," A.Y. resisted the motion to quash, summarizing its position as:

> The garnishment does not seek to obtain, nor encumber, any interest in a trust of which [Michael] is a beneficiary. Rather, the garnishment seeks only the distributions which have been made from the trust and are being held by the bank. Such funds are subject to garnishment and levy upon their distribution. Although [Michael] disagrees with the finding of the Court of Appeals, their decision was clear that once distributions have been made from the trust, they are ripe for collection.

(Internal citation omitted.)

With that backdrop, we start our review. We view a garnishment proceeding as an action at law, and thus, our review is at law rather than de novo. *See Padzensky v. Kinzenbaw,* 343 N.W.2d 467, 469 (Iowa 1984). The district court's findings of fact are binding upon us if those findings are supported by substantial evidence. *Id.* However, we are "not bound by the district court's conclusions of

law, and [we] may inquire into whether the district court's ultimate conclusions were materially affected by improper conclusions of law." *Smith v. Bertram*, 603 N.W.2d 568, 570 (Iowa 1999). Rulings involving statutory interpretation are also reviewed for errors at law. *Vance v. Iowa Dist. Ct.*, 907 N.W.2d 473, 476 (Iowa 2018). Because the two trusts involved have different circumstances to address, we analyze the issues separately as to each.

**A. J. Bruce McDonald Trust Funds.**

As garnishee, the trust advisor at US Bank provided an affidavit and testified that Michael's share of trust distributions in the J. Bruce McDonald Trust was being held—not distributed—and was in a subaccount of the trust pending direction from the district court. Specific to the J. Bruce McDonald Trust, the US Bank trust officer testified that the bank was told to hold Michael's one-sixth share of the quarterly distributions after the attorney-in-fact who was accepting those payments for Michael under the original agreement with A.Y. resigned. After that power of attorney was revoked, the funds have been held in a "subaccount" of the trust for Michael's benefit. The bank continued making distributions as had been done during the time of the agreement (so the other trust beneficiaries received their portions), but as Michael's share went to a subaccount of the trust rather than Michael directly, the bank did not consider the payments to be "distributions" to Michael. The other beneficiaries of the trust were paid and received directly their quarterly distributions. In this 2021 action, US Bank sought guidance from the district court over what to do with the subaccount monies—hold them, pay them to Michael, or pay to the sheriff pursuant to the direction of the garnishment paperwork. The trustee testified:

We're waiting for the Court to tell us that. I mean, those funds, we have total discretion to make distributions in this trust, so we can choose to pay out a dollar, full amount, or anywhere in between. So we take a position, if I understand, that we're waiting for the Court to direct us what to do with those funds, so we don't violate the spendthrift provisions of the trust at the bank.

Here, afraid that the bank was prohibited under a spendthrift trust from making a payment to a creditor, the bank trustee asked for guidance from the court. The trustee acknowledged that he moved the funds into the subaccount so he could monitor where the distributions would go between Michael and A.Y. The district court referenced the earlier 2019 decision to allow garnishment of the funds in the subaccount. After hearing this evidence at the garnishment hearing, the district court denied the motion to quash, noting it was the second time it had the issue before it. The district court stated

The Court did not receive any testimony that is convincing or persuasive to require this court to overturn its previous findings as set forth in its order of February 18, 2019. There was no motion filed for reconsideration. That order was not appealed. It is the law of the case and stands herein. Not even the recent Court of Appeals decision mandates a change of opinion as to the motion to quash. The Plaintiff is now free to seek collections efforts available to it since the Defendant breached the agreement he previously entered into with the Plaintiff to cease its collection efforts.

But the February 18, 2019 order only addressed the J. Bruce McDonald Trust. In that order the court found

"[O]nce income is in the hands of the beneficiary, it loses spendthrift trust protection." "Acquired by" means at the time the income distribution is made. The income distribution from the J. Bruce McDonald Trust has been made and is otherwise in the hands of the Defendant. Placing the money in a sub-account does not change this fact. The sub-account was not shown to have specific provisions associated with it to extend the spendthrift protection. Additionally, the interpleader action seeks a determination by the Court that the bank can deposit money owed to the Defendant with the Clerk of

Court. If the distribution had not been made, there would be no need for this action.

(Internal citations omitted.)

The district court ruled, and A.Y. advances, the theory of "law of the case" prohibits any further discussion over the ruling that the subaccount meant the funds were distributed to Michael. True, the court ruled that garnishment of that subaccount could proceed and no one appealed that February 2019 ruling. But Michael is correct that the law-of-the-case doctrine is inapplicable here. *See, e.g.*, *State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) ("Under the law of the case doctrine, 'the legal principles announced and views expressed *by a reviewing court* in an opinion, right or wrong, are binding throughout the progress of the case upon the litigants, the trial court, and *this court in later appeals*.'" (citation omitted) (emphasis added)). Yet, we agree that as to the monies in the subaccount at US Bank, Michael can no longer dispute that determination; however, it is the doctrine of res judicata involving issue preclusion (not "law of the case") that informs that decision. *See Spiker v. Spiker*, 708 N.W.2d 347, 352–58 (Iowa 2006) (distinguishing between the parties' claims about law of the case with res judicata and resolving the case under the latter doctrine); *Wolfe v. Graether,* 389 N.W.2d 643, 651 (Iowa 1986).

For issue preclusion to apply, four prerequisites must be established:

(1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Clark v. State*, 955 N.W.2d 459, 465–66 (Iowa 2021) (citation omitted). All four prerequisites are met here as to the ruling on the J. Bruce McDonald Trust subaccount. "Issue preclusion applies to both factual and legal issues raised and resolved in the earlier action." *Lemartec Eng'g & Constr. v. Advance Conveying Techs., LLC*, 940 N.W.2d 775, 779 (Iowa 2020). Thus, we affirm the district court's ruling because Michael is precluded in this appeal from raising issues related to the February 2019 ruling he failed to appeal. *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 117 (Iowa 2006) (preventing parties from re-litigating issues previously resolved in prior litigation).

**B. Delos L. McDonald Trust Funds.**

Turning to the second trust, A.Y. urges that monies allocated to Michael in the Delos L. McDonald Trust are distributed to Michael and, thus, are available for garnishment. Unlike the other trust, there was no separate subaccount holding Michael's share of distributed monies. Instead, within the trust established just for Michael, the wealth advisor testified the trust was holding dividends that had been allocated to Michael since the last payment was made in December 2018. The wealth advisor at Dubuque Bank & Trust answered interrogatory questions about the Delos L. McDonald Trust, noting:

> To the best of Dubuque Bank & Trust's knowledge, there are no accounts at Dubuque Bank & Trust or under the control of Dubuque Bank & Trust other than this Trust that Michael McDonald has an interest in and the loan. Michael McDonald has a partial interest in the overall Trust and his share is valued at $2,814,128.90 as of August 20, 2021. The Trust requires that income from the Trust shall be paid in "convenient installments" to a class of beneficiaries that includes Michael McDonald.
> 
> Dubuque Bank & Trust is holding no funds or trust distribution that has already been disbursed to Michael B. McDonald.

This wealth advisor and Michael's attorney had this exchange

> Q. So all the funds that are being held are currently in the McDonald trust; is that correct? A. They're in The [Delos] L. McDonald Trust for the benefit of [Michael]. They're located in the trust account, with the other assets of the trust which are [A.Y.] stock, and the dividends that have been received into the account have not been distributed outside of the trust account.

Finally, the wealth advisor noted that the court would need to determine if the spendthrift clause applied to these funds. He testified "the trust says that it should be disbursed in convenient installments."

> Q. And that $236,000.00 represents what would have been distributed to Mr. McDonald had distributions been approved by legal counsel? Is that correct? A. Yes. Almost all of it. We do hold a small portion back for fees, and there are some expenses of the trust.

The district court took into consideration Michael's testimony he received K-1 forms from the trusts showing distributions made to him in the years 2018, 2019 and 2020. Referencing the tax forms, A.Y. argued

> I think the best evidence is—that distributions have been made is that both banks issued K-1 statements to [Michael], which would require him to report this as income on his taxes, and if they had not been considered distributions, they certainly would not have issued such a filing as required for taxes to be shown to the IRS if and when he would file taxes. So that's the best evidence, Your Honor. The banks consider it to be income to [Micheal]. They give him a K-1 because they are disbursements.

But we cannot find that the Delos L McDonald Trust has made a distribution to Michael such that the spendthrift protections do not apply.

To reach this conclusion, we note: "A spendthrift trust protects the income and principal interests of its beneficiaries from the claims of their creditors as long as the income or principal in question is *properly held* in the trust." Restatement

(Third) of Trusts § 58 cmt. d(2) (Am. Law. Inst. May 2022 Update) (emphasis added); *see also* Iowa Code § 633A.2301.[4]

So, is the money here held in trust? Yes. Next, is the income properly held in trust? As to the creditor, A.Y., the answer is yes. We recognize that Michael could demand his share and be paid it from the trusts once the amount is determined. But, following the laws provided under our spendthrift statutes, we note:

> A beneficiary shall not transfer, assign, or encumber an interest in a trust in violation of a valid spendthrift provision, and a creditor or assignee of the beneficiary of a spendthrift trust shall not reach the interest of the beneficiary or a distribution by the trustee before its *receipt by the beneficiary*.

Iowa Code § 633A.2302(2) (emphasis added). And even if the creditor feels the trustee abused its discretion by withholding payment, our legislature determined that:

> [A] creditor or assignee of a beneficiary of a spendthrift trust shall not compel a distribution that is subject to the trustee's discretion, even if any of the following occur:
>    a. The distribution is expressed in the form of a standard of distribution.
>    b. The trustee has abused its discretion.

*Id.* § 633A.2305(1). And the legislature directed our courts not to order a trustee to exercise its discretion and not to order a payment from such trust:

> If a trustee has discretion as to payments to a beneficiary, and refuses to make payments or exercise its discretion, the court shall

---

[4] Iowa Code section 633A.2301 provides:
> To the extent a beneficiary's interest is not subject to a spendthrift provision, and subject to sections 633A.2305 and 633A.2306, the court may authorize a creditor or assignee of the beneficiary to reach the beneficiary's interest by levy, attachment, or execution of present or future distributions to or for the benefit of the beneficiary or other means.

neither order the trustee to exercise its discretion nor order payment from any such trust, if any such payment would inure, directly or indirectly, to the benefit of a creditor of the beneficiary.

*Id.* § 633A.2306(1). Here, the testimony only referenced discretionary distributions, not mandatory distributions.[5] Thus, we only consider the statutory sections that address the discretionary distributions by the trustee.

So here, the creditor, A.Y., could not compel a distribution from the trust. *See* Martin D. Begleiter, *Son of the Trust Code—the Iowa Trust Code After Ten Years*, 59 Drake L. Rev. 265, 308 (2011) (noting "[t]he power to force a distribution due to an abuse of discretion . . . belongs solely to the beneficiary" and not the creditor where distributions are subject to the trustee's discretion (second alteration in original) (citation omitted)). But if there is an accrued interest of Michael's that the trust is harboring, does that change the answer and is that effectively a distribution? Neither party gave us a clear answer in the briefing, but some jurisdictions say no. *See In re Matter of Moody*, 837 F.2d 719, 723 (5th Cir. 1988) ("Furthermore, income from a spendthrift trust which has already accrued in the hands of the trustee, but which has not yet been paid to the beneficiary, is also exempt from the claims of a beneficiary's creditors."); *In re Kragness*, 58 B.R. 939, 944 (Bankr. D. Or. 1986) ("'To this Court, the common understanding of the term "acquire" means that trust income is "acquired" by the beneficiary at the time the

---

[5] If the trust requires mandatory distributions, even if the money is held in the trust account, a creditor could act to require a distribution if it has not been done within a reasonable time after it was required to be paid. *See* Iowa Code § 633A.2307(1). Neither of the trusts are included in the record before us, so we are unaware of the actual terms of the trusts on this subject. We are relying on the testimony of the bank employees that the payments were discretionary. And, it is not disputed that each trust officer had discretion to pay or not pay the income to Michael.

income distribution is made.' Once income is paid to Mrs. Kragness as beneficiary, the income so paid is no longer subject to the protection of the spendthrift provisions contained in the trust." (internal citations omitted)); *see also* G. Bogert, Handbook of the Law of Trusts, § 40 at 148 (5th ed. 1973) ("It has never been the object of the spendthrift trust to restrain the beneficiary from spending income or principal after it has been paid to him by the trustee, or to restrain his creditors from taking income or principal from him after he has obtained it from the trustee.").

On the one hand, the trust still holds the funds, and until the monies actually leave the trust account and are transferred to Michael, one could argue Michael has not received a distribution. Even though each trust issued a K-1 form, that just shows a distribution has been or will at some point be made—it does not establish the beneficiary *received* the funds. *See* Internal Revenue Service, *Instructions for Form 1041 and Schedules A, B, G, J, and K-1*, Purpose of Form at 3 (2021), https://www.irs.gov/pub/irs-pdf/i1041.pdf ("The fiduciary of a . . . trust . . . uses Form 1041 to report: . . . [t]he income that is either accumulated or held for future distribution or distributed currently to the beneficiaries . . . .").

Arguably, the funds held in trust are funds distributed to Michael, but we read our statutes to mean that the funds are protected until "receipt" by Michael. *See* Iowa Code § 633A.2302(2). "Receipt" means "something received," and "receive" means "to come into possession of or get from some outside source." *Receipt* & *Receive*, *Black's Law Dictionary* (11th ed. 2019). "We do not search beyond the express terms of a statute when that statute is plain and its meaning is clear." *Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003). We also read a statute as a whole to reach a sensible and logical construction. *Id.*

Finally, when the debate is over a word or phrase, we examine the context in which it is used. *Exceptional Persons, Inc. v. Iowa Dep't of Hum. Servs.*, 878 N.W.2d 247, 251 (Iowa 2016). Thus, our statutes require that Michael actually take possession of the funds before collection can proceed.

As further support, the Eighth Circuit found that beneficiaries lacked a "present interest in the income of the trust until such time as the income accrued and until such time as the trustee distributed the income." *First Nw. Tr. Co. v. Internal Revenue Serv.*, 622 F.2d 387, 393 (8th Cir. 1980). As of the garnishment hearing, Michael had yet to take control of the funds. And in *Kiffner v. Kiffner*, 171 N.W. 590, 591 (1919), the court concluded:

> It is true, of course, that when the fund has once passed into the hands of the beneficiary, it becomes his unqualified property, and is subject to the same processes in his hands as any other property. But as long as it is withheld from the control of the debtor, it is beyond the reach of the creditor also.

Because the Delos L. McDonald Trust income remains in the trust account, we reverse the district court and hold that the funds cannot be paid by the trust to A.Y. Rather, A.Y. must wait until the trust distribution is made to Michael so that he has possession of the funds and the purpose of the spendthrift trust is upheld under Iowa law.

**AFFIRMED IN PART AND REVERSED IN PART.**